**UNITED STATES of America**

v.

**Michael COLLAZO.**

**No. SCr. 91–47M.**

United States District Court,
N.D. Indiana,
South Bend Division.

June 8, 1992.

William T. Grimmer, Asst. U.S. Atty., South Bend, Ind., for plaintiff.

Douglas Crawford, South Bend, Ind., for defendant.

## FINDINGS ON SENTENCING

MILLER, District Judge.

### I.

This court came before the court for sentencing hearing on June 3, 1992; the parties presented evidence and argued their respective positions under the Sentencing Guidelines. The court took the issues under advisement to consider the evidence and arguments. The parties' arguments require the court to consider the propriety of the use of the cross-references in U.S.S.G. §§ 2J1.3(c)(1) and 2X3.1 when the defendant lied to a grand jury in part to protect a person being investigated for a drug-related crime, the availability of the "departure for duress" provisions of U.S.S.G. § 5K2.12 when the defendant's motivation for perjury was partly based on concerns for his family's safety, and whether the circumstances of this case are sufficiently unusual to allow departure either from the offense level provided by the cross-references in U.S.S.G. §§ 2J1.3(c)(1) and 2X3.1, or from the mandatory sentencing provision of U.S.S.G. § 5G1.3(a).

### II.

In October, 1986, Michael Collazo was apprehended while attempting to drive a recreational vehicle filled with 2,250 pounds of marijuana from northern Indiana to Florida for Max Perez and Larry Jackson. This was his second such trip. State charges were filed against him, and plea agreement was reached, requiring him to provide a truthful sworn statement of his knowledge of criminal activity. His ensuing statement was untruthful; the plea agreement was withdrawn and he was charged with an additional count of perjury. Mr. Collazo then pleaded guilty to the state charge of possession of more than ten pounds of marijuana and the new perjury charge, and was sentenced to an aggregate twelve years' imprisonment. He is scheduled for release from that sentence on September 28, 1994.

On May 2, 1990, Mr. Collazo was summoned to appear, under a grant of immunity, before a federal grand jury investigating Max Perez, Larry Jackson, and others. While under oath before that grand jury, Mr. Collazo denied that he was involved in the marijuana business in the fall of 1986 with Perez.

As a result of his grand jury testimony, Mr. Collazo was named in two counts of a twenty-one count indictment returned against Perez and several low-level operators who provided marijuana to the enterprise. Mr. Collazo was not charged with any marijuana offense; instead, he was

charged with two counts of making false statements to the grand jury. 18 U.S.C. § 1623. He has tendered a guilty plea to Count 20, pursuant to a plea agreement that calls for Mr. Collazo's cooperation and testimony if required, dismissal of the remaining count, and a binding recommendation that the court impose the sentence at the low end of the applicable sentencing range.

Mr. Collazo faces imprisonment for as long as five years and a fine of as much as $250,000.00, together with a mandatory $50.00 special assessment. Because the offense of conviction occurred in 1990, the Sentencing Guidelines promulgated pursuant to the Sentencing Reform Act of 1984, 28 U.S.C. § 994 *et seq.*, govern the sentencing. *United States v. Parker*, 936 F.2d 950, 955–956 (7th Cir.1991). A presentence report was prepared, and numerous objections were directed to the report's recommendations.

### A.

All references are to the Sentencing Guidelines unless otherwise noted. Section 2J1.3, which applies to most perjury sentences, ordinarily establishes a base offense level of 12. Section 2J1.3(c)(1), however, provides that if the offense involved perjury in respect to a criminal offense, the court is to apply the offense level established with respect to the underlying offense by § 2X3.1, if that offense level is higher than otherwise would be provided. The parties agree that but for § 2J1.3(c)(1), the base offense level would be 12.

Section 2X3.1(a) provides a base offense level six levels lower than the offense level for the underlying offense, but in no event less than an offense level of 4, nor more than 30. To determine the offense level for the underlying offense, the court must turn to the drug quantity table of § 2D1.1(a)(3), applying the principles of "relevant conduct" set forth in § 1B1.3. The presentence report computed the applicable drug quantity by adding the quantities of marijuana alleged in the indictment up to the time of Mr. Collazo's arrest; when so calculated, Mr. Collazo would be criminally responsible for 1,791.72 kilograms of marijuana.

The base offense level for possession with intent to distribute 1,791.72 kilograms of marijuana is level 32. § 2D1.1(c)(6). Mr. Collazo contends (for reasons not fully developed) that the court should consider only the 2,250 pounds with which he was caught and for which he was convicted in the state court. That argument need not be addressed, because even that lesser amount would place the defendant in the same offense level under § 2D1.1(c)(6). Reducing that offense level by six levels pursuant to § 2X3.1, the base offense level would be 26. The parties agree, and the court concurs, that Mr. Collazo has accepted personal responsibility for the offense of conviction, and so is entitled to a two-level reduction in his offense level pursuant to § 3E1.1(a), producing an adjusted offense level of 24.

The state convictions discussed above comprise Mr. Collazo's sole prior criminal record. Because one of those convictions relates to conduct reflected in the offense level, the presentence report recommends assessment of no criminal history points; again, the parties raise no objections to that calculation.

An offender at offense level 24 and criminal history category I faces a sentencing range of fifty-one to sixty-three months; the five-year maximum sentence for the offense of conviction constricts the sentencing range to fifty-one to sixty months. Because the offense of conviction occurred while Mr. Collazo was serving his state sentence, "the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment." § 5G1.3(a). Thus, under the plea agreement's binding recommendation, Mr. Collazo would receive a fifty-one month sentence to be served consecutively to his Indiana sentence.

### B.

Mr. Collazo disagrees with these calculations.

He challenges the applicability of § 2X3.1 on several grounds. First, he ar-

gues as a factual matter that he did not lie to the grand jury to obstruct the investigation, but rather for fear for his family's safety. He told the probation officer, though, that he lied to protect Perez; that was among his motivations. *See United States v. Rosengard,* 949 F.2d 905, 908 (7th Cir.1991) (court may consider defendant's comments to probation officer in finding facts pertinent to Sentencing Guidelines). The Background Commentary to § 2J1.3 (by its incorporation of the commentary to § 2J1.2) indicates that the cross-reference is intended to be used when the conduct is part of an effort to assist another person to escape punishment for an offense.

■ Second, he contends that, because he already is serving a state sentence for the marijuana activity, consideration of the marijuana activity in determining the offense level would constitute "double counting" in contravention of the spirit of the Sentencing Guidelines. The court disagrees. Impermissible "double counting" occurs when the guideline range calculations include the same factor twice. *United States v. Bell,* 716 F.Supp. 1207, 1210 (D.Minn.1989) (robbery sentence cannot be enhanced for possession of firearm if sentence is imposed under 18 U.S.C. § 924(c), as well). Mr. Collazo's marijuana activity is counted but once—in determining the offense level under § 2X3.1. "Double counting" would occur if the state conviction also were counted for purposes of calculating his criminal history points, but the presentence report's recommendation counts the marijuana activity but once. There is no double counting. *See United States v. Ewings,* 936 F.2d 903, 910 (7th Cir.1991) (running guideline and pre-guideline sentences consecutively was not "double counting", although guideline sentence considered pre-guideline conduct).

■ Use of § 2X3.1 plainly is correct. Appendix A directs the user to § 2J1.3 for violations of 18 U.S.C. § 1623, *see United States v. Pacione,* 950 F.2d 1348, 1356 (7th Cir.1991), and § 2J1.1(c) directs the user to § 2X3.1 if the offense involved perjury in respect to a criminal offense.

■ Mr. Collazo cites *United States v. Koonce,* 945 F.2d 1145 (10th Cir.1991), in support of an argument that the double jeopardy clause prohibits consideration of conduct for which he already has been convicted. This case does not implicate the double jeopardy clause. Mr. Collazo was convicted of drug dealing in the Indiana court; he is being sentenced here for lying to the federal grand jury about the drug dealing.

### C.

■ Mr. Collazo also argues that the use of 1986 conduct to compute Mr. Collazo's sentence violates the *ex post facto* provisions of the United States Constitution. The court cannot agree. The Sentencing Guidelines do not apply to crimes committed before November 1, 1987, *United States v. Morris,* 957 F.2d 1391, 1403 (7th Cir.1992), but Mr. Collazo did not commit the crime of conviction before November 1, 1987. He committed the crime in May 1990. Pre-guidelines conduct still may be considered, just as the court could consider pre-guidelines criminal convictions in determining the criminal history category. *United States v. Mettler,* 938 F.2d 764, 768 (7th Cir.1991).

### D.

■ Mr. Collazo also objects to application of the mandatory sentencing provisions of § 5G1.3(a), contending that subsections (b) or (c) should apply. Again, the court must disagree. While it is true that a sentencing court generally has discretion to impose consecutive or concurrent sentences, *United States v. Russell,* 905 F.2d 1450, 1457 (10th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 267, 112 L.Ed.2d 224 (1990), the Sentencing Guidelines curtail that discretion in the interests of uniformity. Section 5G1.3(b) applies only "[i]f subsection (a) does not apply"; § 5G1.3(c) applies only "[w]here the defendant is serving an unexpired term of imprisonment in circumstances other than those set forth in subsections (a) or (b). . . ." Application Note 4. Accordingly, if § 5G1.3(a) applies, reference to subsection (b) or (c) is not autho-

rized by the Guidelines. Subsection (a) plainly applies; Mr. Collazo lied to the grand jury while he was serving a term of imprisonment.

The differential treatment provided by subsections (a) and (b) is easily explained. If subsection (a) does not apply, subsection (b) requires the court effectively to give a defendant credit for time already served for conduct that was part of the offense of conviction and fully taken into account in determining the offense level. *See* § 5G1.3 Background Note. Subsection (a) requires no such credit. The guideline reflects the differential treatment appropriate when a crime is committed by one already serving a sentence of imprisonment. *See also United States v. Shewmaker,* 936 F.2d 1124, 1128 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992) ("when an offense is committed during the term of a previously imposed sentence, the new sentence must run consecutively to the old unless the court determines that Guideline departure is appropriate"); *United States v. Fossett,* 881 F.2d 976 (11th Cir.1989).

### E.

Mr. Collazo argues for a downward departure, and the government agrees that grounds for departure might exist.

### 1.

■ Mr. Collazo points to § 5K2.12 in support of his argument for departure; that section provides, in pertinent part:

> If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range.... Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency.

Mr. Collazo told the probation officer that he lied to the grand jury to protect his old friend and employer, Perez, and also from concern for his family's safety if he told the truth. At the sentencing hearing, Mr. Collazo explained that while neither Perez nor anyone else had made any threats, he was uncertain of the nature of the company Perez might have been keeping by then. The court cannot find that Mr. Collazo's concern for his family's safety, although a partial reason for his crime, was based on anything other than speculation. *See United States v. Russell,* 917 F.2d 512, 516 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1427, 113 L.Ed.2d 479 (1991). If these facts entitle Mr. Collazo to a § 5K2.12 departure, any perjury defendant who lied about drug dealers is equally entitled to the departure. The court cannot find that the duress was "sufficiently serious to warrant departure".

### 2.

■ Mr. Collazo also argues that his cooperation and guilty plea should trigger a downward departure under the rationale of *United States v. Garcia,* 926 F.2d 125 (2nd Cir.1991). This court is doubtful of the *Garcia* rationale that some sorts of assistance to the prosecution and the judicial system can fall through the cracks of §§ 5K1.1 and 3E1.1 and emerge as a factor inadequately considered by the Sentencing Commission. *See United States v. Smith,* 953 F.2d 1060, 1063–64 (7th Cir.1992). Even accepting that premise, however, the *Garcia* court relied on the defendant's having broken "the log jam in a multi-defendant case that's pending in the seriously overclogged dockets of the District Courts of the United States." 926 F.2d at 127. Mr. Collazo has broken no logjam.

Mr. Collazo's adjusted offense level reflects his acceptance of responsibility, and the court is not authorized to credit him more than two levels for acceptance of responsibility. *United States v. Donatiu,* 720 F.Supp. 619, 622–623 (N.D.Ill.1989). Mr. Collazo cites *United States v. Justice,* 877 F.2d 664 (8th Cir.), *cert. denied,* 493 U.S. 958, 110 S.Ct. 375, 107 L.Ed.2d 360 (1989), for the proposition that the court may depart due to his assistance to the prosecution even in the absence of a motion by the government under § 5K1.1(a). *Jus-*

*tice* does not represent the law of this circuit, *United States v. Rosa*, 946 F.2d 505, 510 (7th Cir.1991), and the United States Supreme Court recently held that a sentencing court may depart on these grounds without a governmental motion only if the government's refusal to file a motion is based on some impermissible reason such as race. *Wade v. United States*, —— U.S. ——, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992). No such claim is raised here.

Mr. Collazo relies on *United States v. Khan*, 920 F.2d 1100, 1107 (2nd Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1606, 113 L.Ed.2d 669 (1991), for the proposition that the court may depart downward when a defendant has offered information concerning his own actions, although that information could not be used to prosecute others. That language in the *Khan* opinion, contained within a discussion of the extent to which § 5K1.1 impliedly forbids departure by evidencing the Sentencing Commission's consideration, must be read to mean information about the defendant's own uncharged criminal activity not involving others. The *Khan* opinion itself indicates that departure is not permissible under § 5K2.0 for information about others; § 3E1.1 addresses the defendant's truthful admission of his involvement in the charged crime. The record does not suggest, much less show, that Mr. Collazo provided information about his individual, uncharged criminal activity.

### 3.

In support of its argument that grounds for departure might exist, the government points to § 5K2.0, which authorizes departure "if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" *Accord* 18 U.S.C. § 3553(b). Such a finding is necessary to trigger the court's discretion to depart. *United States v. Boula*, 932 F.2d 651, 655 (7th Cir.1991); *United States v. Correa–Vargas*, 860 F.2d 35, 40 (2nd Cir. 1988). Mr. Collazo joins this argument.

### a.

The parties note that Mr. Collazo already has been serving an eight-year sentence for his drug activity and that all other defendants in the case (other than Perez, who is charged with conducting a continuing criminal enterprise) will have received less than eight-year sentences, and they argue that these are circumstances the Sentencing Commission could not have taken into account.

The court sees no basis for concluding that the Sentencing Commission did not take such circumstances into account. Indeed, the commentary to § 2J1.2(c), which is cross-referenced by the commentary to § 2J1.3 and is entitled to the weight of an interpretive aid akin to a statute's legislative history, *United States v. Beal*, 960 F.2d 629, 631 (7th Cir.1992), indicates that the Sentencing Commission considered the circumstance of perjury in furtherance of more serious criminal activity, and that cross-reference to § 2X3.1 is precisely what the Commission intended. If a case like Mr. Collazo's was not what the Commission contemplated by § 2J1.3, it is difficult to identify the type of case the Commission did contemplate. "[N]o departure is permitted on the basis of circumstances adequately taken into account by the Sentencing Commission." *United States v. Bruder*, 945 F.2d 167, 172 (7th Cir.1991) (en banc).

### b.

The cross-reference required by §§ 2J1.3(c)(1) and 2X3.1 lead the court to a drug quantity table that reflects 1990 penalties for drug activity. That table would not govern Mr. Collazo's sentencing were he being sentenced for that drug activity, because the drug activity occurred before the Guidelines' effective date. Recognition that Congress has increased the penalty for drug offenses since the drug activity in question lends credence to the argument that 1990 standards should not govern perjury designed to conceal 1986 drug activity.

The Sentencing Commission, however, has shown itself to be keenly aware of the matter of applying today's guideline to yes-

terday's crime; each of its annual amendments to the Guidelines carry the admonition that the court should apply the guideline in effect at sentencing rather than the guideline in effect at the time of the crime. Whether such application offends the *ex post facto* law is a topic of current debate, *see United States v. Bader,* 956 F.2d 708, 709 (7th Cir.1992); *United States v. Bradach,* 949 F.2d 1461, 1465 n. 5 (7th Cir. 1991), but that issue is not present here: the guideline in effect in 1990 is being applied to a crime committed in 1990. The Commission's comments make plain that the Sentencing Commission has considered the issue, making departure improper.

c.

Nor can the court say that the Sentencing Commission did not contemplate, when adopting § 5G1.3(a), that the "first" sentence, to which the guideline sentence would have to be consecutive, might be a lengthy one. The Commission has busied itself with promulgating guidelines that produce lengthy sentences.

It is true that Mr. Collazo's previously existing sentence was not one imposed under the Guidelines. As it happens, the previous sentence was a non-guideline sentence not because the offense conduct occurred before the Guidelines' effective date, but rather because it was imposed by a state court not bound by the Sentencing Guidelines. The Application Notes to § 5G1.3 clearly indicate that the Sentencing Commission was aware that the prior undischarged term of imprisonment might as easily have been imposed by a state court as by a federal court.

d.

Both parties cite *United States v. Gomez–Vigil,* 929 F.2d 254 (6th Cir.1991), in support of their arguments for departure. While *Gomez–Vigil* presents some analogous facts, the court can find no support in that case for a downward departure on the grounds urged in this case. The Sixth Circuit held that the district court had applied U.S.S.G. §§ 2J1.3(c)(1) and 2X3.1 properly; no other sentencing issue was raised on appeal. Plainly, other sentencing issues were presented to the district court, be-

cause the Sixth Circuit noted, "The district judge departed from the applicable guideline range (51–63 months), however, and sentenced Gomez–Vigil to two concurrent 24 month prison terms." 929 F.2d at 259. The appellate opinion does not identify the grounds for departure; the district court's opinion is not reported.

The parties assume that the district judge must have departed downward due to the harshness of the result mandated by the Guidelines. The court does not believe such an assumption can be made; the only available opinion simply provides too little information concerning the grounds for departure. Further, a district court's disagreement with the sentence prescribed by the Guidelines is not a basis for departure in this circuit. *United States v. Thomas,* 906 F.2d 323, 329 (7th Cir.1990). As the court said in only a slightly different context,

> Whatever one's view of the sentencing consistency achieved by the Guidelines ... the Guidelines seek to end disparity ... and that goal would be undermined if the presumptive ranges could too easily be circumvented.

> Although we understand the district court may have been concerned in the present case over a sentence it perceived as unduly harsh, it is our function to apply, rather than to recreate, the Guidelines.

*United States v. Andruska,* 964 F.2d 640, 646 (7th Cir.1992).

e.

The court also disagrees that a downward departure is appropriate to avoid disparity with the sentences imposed on other co-defendants. This argument fails on several grounds. First, under the Sentencing Guidelines, each defendant must be considered individually, rather than with respect to sentences imposed on other defendants. *See, e.g., United States v. Smith,* 897 F.2d 909, 911 (7th Cir.1990) ("Of course, McCall's conduct has no effect on the correct calculation of Smith's offense level."). Second, the Sentencing Guidelines were intended to change sentencing practices; de-

partures to match non-guidelines sentences would defeat that purpose. *See United States v. Fonner,* 920 F.2d 1330, 1335 (7th Cir.1990) ("an effort to maintain comparability with pre-guideline sentences is not, at all events, a good reason to depart. The guidelines are meant to change sentencing practices, not renew them.").

Most importantly, like the appellant in *United States v. Hoffman,* 957 F.2d 296, 301 (7th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 2315, 119 L.Ed.2d 235 (1992), Mr. Collazo differs from his co-defendants, all of whom (to date) have been sentenced under pre-guidelines law, and none of whom were convicted of lying to a grand jury about their activity while already serving a prison sentence for the marijuana activity. Thus, notwithstanding *United States v. Ray,* 930 F.2d 1368 (9th Cir.1990), and *United States v. Nelson,* 918 F.2d 1268 (6th Cir.1990), a downward departure is unnecessary to avoid disparate sentences among like offenders.

The principal fact that separates this case from others of its sort relates not to the crime or the defendant's personal circumstances, but rather is that Mr. Collazo was indicted with other persons whose crimes differed and who were not subject to the Sentencing Guidelines. This court does not believe that grouping a dissimilar defendant charged with a dissimilar crime with others warrants a departure to produce a lower sentence.

#### f.

The court concurs with the parties that a combination of circumstances, though individually insufficient to allow a downward departure, may combine to present a case that falls outside the "heartland" of cases intended to be addressed by the Sentencing Guidelines. *See United States v. Ferra,* 900 F.2d 1057, 1061 (7th Cir.1990). In this case, however, none of the factors approaches the sort of circumstance that would give rise to departure; each appears to have been firmly within the Sentencing Commission's contemplation. The court is unconvinced that any combination of factors present in this case place it outside the "heartland", warranting departure.

#### 4.

A final point must be made. The court's holding that the law disallows a departure does not mask a disinclination to depart. If the law allowed a departure, the court would impose a sentence somewhat below the applicable guideline range. The court would not, however, depart to the extent the defendant seeks (level 12, reduced by two levels for acceptance of responsibility, producing a sentencing range of six to twelve months).

Mr. Collazo has committed three crimes (four, if one counts each drive for Perez as a separate crime). He was involved in marijuana dealing and was sentenced for that crime. He lied in connection with his state plea agreement and was sentenced to additional time for that crime. Then, while still in prison, he lied to a federal grand jury about his drug dealing; the court sees no injustice in the defendant being required to serve additional time for that crime, or in requiring the additional time to be substantial in light of the crime's commission by an inmate serving sentences for dealing marijuana and perjury.

Because his prior state convictions were related, and the conduct giving rise to one of the convictions already is reflected in the offense level, no criminal history points were assessed. *See* §§ 4A1.2(a)(1), (2). Mr. Collazo's criminal record, however, contains a very similar prior conviction: he lied to state authorities about his involvement with Perez. His present sentencing range does not reflect that conduct. Accordingly, it cannot be said that his criminal history category—a category he shares with first offenders—adequately reflects the seriousness of Mr. Collazo's criminal conduct. Under such circumstances, § 4A1.3 would give the court discretion to depart upward. Given the length of the sentence mandated by the existing sentencing range, the court sees no need to exercise that discretion. Were the court departing downward, however, this consideration would temper that departure.

In any event, the court concludes that it cannot depart.

**522**

### III.

Accordingly, the court concludes that Mr. Collazo's sentencing range is fifty-one to sixty months; in light of the parties' binding plea agreement, the court must impose a sentence of fifty-one months imprisonment if it accepts the plea. A sentence of fifty-one months, to be served consecutively, adequately reflects the crime's seriousness; accordingly, the court accepts the defendant's guilty plea. *See* § 6B1.2(c)(1).